**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| MEGAN BROWN, | ) |
| | ) |
| Plaintiff, | ) |
| | )   Case No. 12-CV-587-JED-PJC |
| v. | ) |
| | ) |
| STANLEY GLANZ, | ) |
| | ) |
| Defendant. | ) |

**OPINION AND ORDER**

The Court has for its consideration the Motion to Dismiss (Doc. 12) filed by defendant Stanley Glanz, plaintiff's Response (Doc. 18), and Glanz's Reply (Doc. 20).

**I.    Background**

This is an employment discrimination action in which plaintiff alleges violations of Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1983, on the basis of alleged race and sex discrimination. (Petition, Doc. 2 at 5).[1] According to her pleading, she is an African American woman who began work for defendant as a Detention Officer in July of 2005. She applied in October of 2007 for the positions of Supervisor and Deputy. She passed the required exam for promotion. On November 28, 2007, defendant notified plaintiff that her application had been withdrawn for failure to complete the background process, although she had been subject to a background check when she was hired to work as a Detention Officer. She was advised to "wait a few years" and reapply. In June 2009, she passed the required exam for promotion to Non-Certified Corporal and Sergeant. In September 2009, "despite being the highest ranking applicant, Defendants merely promoted Plaintiff to the position of Non-Certified Corporal,

---

[1]    Plaintiff previously dismissed claims against the Board of County Commissioners of Tulsa County, pursuant to a Stipulation of Dismissal without Prejudice. (Doc. 15).

instead of the higher ranking position of Sergeant, which was an open position." (Doc. 2 at 7, ¶¶ 13-21). According to plaintiff, when she inquired as to why she was not promoted to Sergeant in September 2009, she was informed by Chief Michelle Robinette that, "because she was a black woman, she would need to work harder." (*Id.* at ¶ 22).

Plaintiff also asserts that she was "never paid the appropriate rate for her rank and position based upon Defendants' own policies and pay scales." (*Id.* at ¶ 23). In October 2009, she filed a grievance based on a failure to pay her appropriately. In February 2010, she was required to perform her supervisor's job duties (as Sergeant) on an interim basis. (*Id.* at ¶ 25). Four months later, a white male was promoted to Sergeant. Thereafter, plaintiff retested for the same position and was informed that she was "first on the list for promotion." (*Id.* at ¶¶ 26-28).

Notwithstanding her attempts to resolve the failure to properly pay her by direct discussions with Sheriff Glanz and Undersheriff Edwards, plaintiff contends that Glanz "refused to review Plaintiff's grievance or the policies that were pertinent to her pay." (*Id.* at ¶ 29-32). Moreover, Glanz informed plaintiff that he was aware that the policy required higher pay for plaintiff, but that he planned to change the policy because "he could" and, if plaintiff disagreed, she could resign. (*Id.* at ¶¶ 33-34). Although qualified for the position of Sergeant, plaintiff was not promoted, and Caucasian male co-workers were promoted before plaintiff. (*Id.* at ¶¶ 35-36).

Based on the foregoing allegations, plaintiff asserts six claims for relief: (1) disparate treatment based on race; (2) a claim under 42 U.S.C. § 1981; (3) a claim under 42 U.S.C. § 1983 acting under color of law; (4) disparate impact based on race; (5) retaliation for engaging in protected activity; and (6) disparate treatment based on gender.

The defendant has moved to dismiss all of plaintiff's claims for failure to state a claim and, alternatively, the defendant argues that the Court should dismiss any claims against the defendant in his individual capacity.

## II.     Dismissal Standards

In considering a Rule 12(b)(6) dismissal motion, a court must determine whether the plaintiff has stated a claim upon which relief may be granted. *See* Fed. R. Civ. P. 12(b)(6). The Federal Rules of Civil Procedure require "a short and plain statement of the claim to show that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The standard does "not require a heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face," and the factual allegations "must be enough to raise a right to relief above the speculative level." *Id*. at 555-56, 570 (citations omitted). "Asking for plausible grounds . . . does not impose a probability requirement at the pleading stage; it simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence [supporting the claim]. And, of course, a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" *Id*. at 556. "Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Id*. at 562.

*Twombly* articulated the pleading standard for all civil actions. *See Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009). For the purpose of making the dismissal determination, a court must accept all the well-pleaded factual allegations of the complaint as true, even if doubtful, and must

construe the allegations in the light most favorable to the claimant. *See Twombly*, 550 U.S. at 555; *Alvarado v. KOB–TV, L.L.C.*, 493 F.3d 1210, 1215 (10th Cir. 2007).

### III.     Title VII Claims (First, Fourth, Fifth and Sixth Claims for Relief)

   *A.     Untimeliness*

Defendant asserts that all of plaintiff's Title VII claims must be dismissed for untimeliness. In a deferral state like Oklahoma, a Title VII charge "shall be filed" with the Equal Employment Opportunity Commission, within 300 days "after the alleged unlawful employment practice occurred. . . ." 42 U.S.C. § 2000e-5(e)(1); *see Peterson v. City of Wichita, Kansas*, 888 F.2d 1307, 1308 (10th Cir. 1989). "A discrete retaliatory or discriminatory act 'occurred' on the day that it happened.' A party, therefore, must file a charge within either 180 or 300 days of the date of the act or lose the ability to recover for it." *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 110 (2002). Several principles apply to allegations of discrete acts of discrimination:

> First, discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges. Each discrete discriminatory act starts a new clock for filing charges alleging that act. The charge, therefore, must be filed within the 180 or 300-day time period after the discrete discriminatory act occurred. The existence of past acts and the employee's prior knowledge of their occurrence, however, does not bar employees from filing charges about related discrete acts so long as the acts are independently discriminatory and charges addressing those acts are themselves timely filed. Nor does the statute bar an employee from using the prior acts as background evidence in support of a timely claim.

*Id.* at 113.

Defendant seeks dismissal of plaintiff's Title VII claims (plaintiff's First, Fourth, Fifth and Sixth Claims) because plaintiff's Petition does not allege that she **timely** filed a charge of discrimination, which is a condition precedent to bringing Title VII claims. *See Montes v. Vail Clinic, Inc.*, 497 F.3d 1160, 1167 (10th Cir. 2007). In her Petition, plaintiff alleges that she

"filed a charge of discrimination . . . Charge No. 564-2011-1064" (Doc. 2 at 6, ¶ 2), but she does not attach the charge or reference the date on which the charge was submitted to the EEOC. Defendant supplied the charge with its dismissal motion.[2] The charge is dated August 17, 2011. (Doc. 12-1). Thus, defendant asserts that only claims based upon adverse employment actions occurring within 300 days before August 17, 2011 (i.e. adverse actions occurring on or after October 21, 2010) would be timely.

In response, plaintiff asserts that she submitted an Intake Questionnaire, dated May 30, 2011, which should be considered a formal charge of discrimination. (Doc. 18 at 3-4 and authorities cited). However, she did not reference the Questionnaire in her Petition. Instead, she referenced the formal charge (by Charge Number), which she filed with the EEOC dated August 17, 2011. (Doc. 2 at 6, ¶ 2). Even if the Court were to consider and construe the Intake Questionnaire as a charge of discrimination, as plaintiff requests, only those acts that occurred within 300 days before May 30, 2011 (on or after August 3, 2010) would be actionable.[3] Thus, construing the allegations in the light most favorable to plaintiff and applying plaintiff's argument, any Title VII claims plaintiff may have had for the following allegations in her Petition are time-barred: (1) the November 28, 2007 notification that plaintiff's application for

---

[2] Without converting a Rule 12(b)(6) motion to summary judgment, a district court "may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity." *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2000); *Alvarado v. KOB-TV*, 493 F.3d 1210, 1215 (10th Cir. 2007).

[3] The Court notes that plaintiff did *not* select "Sex" discrimination as a basis for her claim when completing the Intake Questionnaire, but selected "Race" and "Retaliation". (*See* Doc. 18-1 at 2 of 5, boxes under "What is the reason (basis) for your claim of employment discrimination?"). Thus, plaintiff's Intake Questionnaire could not be the basis for any alleged sex discrimination absent factual allegations encompassing sex discrimination. At the same time, plaintiff's August 17, 2011 Charge of Discrimination did not include Retaliation as a form of discrimination suffered by plaintiff, while the Intake Questionnaire did assert Retaliation. (*See* Doc. 12-1).

supervisor and deputy positions was deemed withdrawn; (2) the September, 2009 promotion to a position lesser than Sergeant and the alleged explanation given for the failure to promote her to Sergeant ("because she was a black woman, she would need to work harder"); (3) the events surrounding her filing of an October 2009 grievance for an alleged failure to pay her appropriately for her rank; (4) the February 2010 assignment to interim Sergeant duties; and (5) the promotion of a white male, instead of plaintiff, to Sergeant "four months" later (June 2010). (Doc. 2 at ¶¶ 17-26).

Plaintiff does not argue that she timely filed a charge of discrimination for the above actions, but argues that her Title VII claims are timely based upon the following, which allegedly occurred on or after August 3, 2010: (1) an August 4, 2010 email in which plaintiff was informed she was first on the list for promotion (Doc. 2 at 28); (2) plaintiff continued to be underpaid for her position as of September 2010; and (3) thereafter, defendant "ratified the discriminatory pay practices." (Doc. 18 at 4-5). The August 4, 2010 email may be relevant background information if plaintiff has otherwise alleged an actionable, unlawful employment practice. *See Morgan*, 536 U.S. at 113. However, the email itself does not constitute any adverse employment action, and plaintiff has not identified any such adverse action resulting from the statement in that email, nor has she specified any position after the August 4, 2010 email for which she was qualified but to which defendant failed to promote her.

Plaintiff's allegations regarding continuing pay deficiencies could be timely *if* plaintiff sufficiently alleged that such pay deficiencies were the result of *discrimination in compensation*. Congress has specifically identified when discrimination in compensation occurs:

> [A]n unlawful employment practice occurs, with respect to discrimination in compensation in violation of this subchapter, when a discriminatory compensation decision or other practice is adopted, when an individual becomes subject to a discriminatory compensation decision or other practice, or when an individual is

> affected by application of a discriminatory compensation decision or other practice, *including each time wages, benefits, or other compensation is paid, resulting in whole or in part from such a decision or other practice*.

42 U.S.C. § 2000e-5(e)(3)(A) (emphasis added). This provision was enacted in 2009 as part of the Lilly Ledbetter Fair Pay Act (the "FPA"), and it governs the limitations period applicable to certain types of pay discrimination claims.

The Tenth Circuit has determined that the FPA's extended limitations period applies *only* to "situations in which a member of a protected class receives less pay than similarly situated colleagues – that is, unequal pay for unequal work." *Almond v. Unified School Dist. No. 501*, 665 F.3d 1174, 1175 (10th Cir. 2011). In *Almond*, the court noted the long-standing rule applicable to federal statutory limitations periods: "the clock starts running when the plaintiff first knew or should have known of his injury, whether or not he realized the cause of his injury was unlawful." 665 F.3d at 1176 (citing cases). In the employment discrimination context, the court noted that the "rule generally means that a claim accrues when the disputed employment practice – the demotion, transfer, firing, refusal to hire, or the like – is first announced to the plaintiff." *Id.* at 1177. However, when an employee does not learn of an adverse employment decision until much later, the courts ask when "a reasonable employee would have known of the employer's decision." *Id.*

"But in all events . . . an employee who discovers, or should have discovers, the *injury* (the adverse employment decision) need not be aware of the unlawful *discriminatory intent* behind that act for the limitations clock to start ticking." *Id.* After determining that the plaintiffs' claims were untimely under the normal accrual rules, the Court considered whether the FPA would save plaintiffs' otherwise time-barred claims. In conducting that analysis, the Court held that the FPA does *not* extend the limitations period for filing discrimination claims based

7

upon discrete actions (i.e. hiring, firing, promotion, demotion, and transfer decisions) even though those actions may touch on pay. *Id.* at 1182-83. Instead, claims for such discrete actions continue to accrue as soon as they are announced. *Id.* The FPA extends the filing deadline *only* for claims based upon unequal pay for equal work. *Id.*

While plaintiff alleges continuing pay deficiencies, those allegations do not set forth a plausible claim for *discrimination in compensation*. Aside from her conclusory allegations that she was treated differently than "similarly-situated Caucasian employees" and "male employees" "with regard to job assignments, benefits, and promotions" (Doc. 2 at ¶¶ 45, 66), plaintiff has not set forth any facts supporting a claim based upon *unequal pay for equal work*. A formulaic recitation of elements or conclusions is insufficient to state a claim, and plaintiff's conclusory averments do not include enough facts to state a claim plausible on its face. *See Twombly*, 550 U.S. at 555-56, 570.

In relation to her pay, plaintiff alleges that: she was not "paid the appropriate rate for her rank and position" under defendant's "policies and pay scales"; her pay was not corrected after the October 2009 grievance; and defendant "refused to review plaintiff's grievance or the policies that were pertinent to her pay." (Doc. 2 at ¶¶ 23, 24, 29-33). Allegations such as these do not state a plausible claim for compensation discrimination, which requires that plaintiff allege that she occupied a job similar to that of a male and/or Caucasian employee who was paid more than she was. *See, e.g., Almond*, 665 F.3d at 1181; (citing *Johnson v. Weld County, Colorado*, 594 F.3d 1202, 1215 (10th Cir. 2010)). Plaintiff has not identified any men or Caucasian employees who were paid more than she was paid for similar work, nor has she tied any allegations of incorrect pay to any actions other than a general failure of defendant to promote her or to pay her in accordance with department pay scales. "'[D]iscrimination in

compensation' means paying different wages or providing different benefits to similarly situated employees, not promoting one employee but not another to a more remunerative position.'" *Daniels v. United Parcel Serv.*, 701 F.3d 620, 630-31 (10th Cir. 2012) (quoting *Schuler v. PricewaterhouseCoopers, LLP*, 595 F.3d 370, 374 (D.C. Cir. 2010)). She has also not alleged that white employees or male employees were always paid, without exception, under the pay scales established by the sheriff. In short, plaintiff has not stated a Title VII claim for discrimination in compensation.

As a result of the foregoing, plaintiff's Title VII claims that are based on allegations relating to a failure to promote her in 2007, 2009 and through June 2010, even though those decisions may have touched upon her pay, are time-barred and are not saved by the FPA. *See id.; see also Daniels*, 701 F.3d at 630 (failure to promote claim, which merely touched on pay, was not made timely under the FPA). Those claims are accordingly dismissed with prejudice.

Further, on the facts alleged, plaintiff has not stated a claim for compensation discrimination. She may amend her pleading to attempt to state such a claim.

    *B.    Disparate Impact*

In her Fourth Claim for Relief under Title VII, plaintiff asserts a claim for disparate impact based on race. (Doc. 2 at 8-9). In support of that claim, she alleges that "African American employees are denied promotions, raises and equal compensation over Caucasian employees as a result of reliance on policies and practices that have an adverse impact on African American employees." (*Id.* at ¶ 56). She further asserts that she "is informed and believes that such policies and practices . . . include . . . [r]eliance on racial stereotypes in making employment decisions involving job assignments, promotions, discipline, and compensation; [p]reselection and grooming of Caucasian employees for promotion, favorable assignments and

compensation; [and] reliance upon arbitrary and/or subjective criteria in job assignments, performance reviews, compensation, promotion and discipline decisions." (*Id.* at 57).

A Title VII disparate impact claim may be maintained where the defendant "uses a particular employment practice that causes a disparate impact on the basis of race . . . and the [employer] fails to demonstrate that the challenged practice is job related for the position in question and consistent with business necessity. . . ." 42 U.S.C. § 2000e-2(k)(1). Disparate impact occurs "when a facially neutral practice adversely affects members of a protected group more than others regardless of whether such adverse impact was actually intended." *Tyler v. City of Manhattan*, 118 F.3d 1400, 1405 (10th Cir. 1997). To establish a prima facie case of disparate impact, a plaintiff must show that the source of the disparate impact was a "specific identifiable employment practice or policy." *Carpenter v. Boeing Co.*, 456 F.3d 1183, 1193 (10th Cir. 2006) (citation omitted). The disparate impact framework under Title VII seeks to remove employment obstacles that are not required by business necessity but "which create built-in headwinds and freeze out protected groups from job opportunities and advancement." *Tabor v. Hilti, Inc.*, 703 F.3d 1206, 1220 (10th Cir. 2013) (quoting *E.E.O.C. v. Joe's Stone Crab, Inc.*, 220 F.3d 1263, 1274 (11th Cir. 2000)).

Plaintiff's allegations do not state a claim for disparate impact based on race. Her vague allegations of racial stereotyping, "arbitrary and/or subjective criteria," and "preselection and grooming of Caucasian employees" do not identify a *specific* practice that, when applied, has a disparate impact on African American employees. "It is not enough to simply allege that there is a disparate impact on workers, or point to a generalized policy that leads to such an impact." *Smith v. City of Jackson, Miss.*, 544 U.S. 228, 241 (2005). An employee is "'responsible for

isolating and identifying the *specific* employment practices that are allegedly responsible for any observed statistical disparities.'" *Id.* (citation omitted).

Plaintiff's allegations do not identify any specific test, requirement or practice with any adverse impact, and her disparate impact claim (Fourth Claim of Relief) should be dismissed. *See id.* (affirming dismissal of age disparate impact claim where plaintiff only generally alleged a differing pay plan and did not identify a particular test within the pay plan that caused any disparate impact); *Fulcher v. City of Wichita, Kansas*, 445 F. Supp. 2d 1271, 1275 (D. Kan. 2006) (allegations that defendant failed to provide equal training opportunities, promoting race-biased individuals into supervisory positions, relying upon subjective, race-biased and/or arbitrary criteria in job decisions, and paying minorities less failed to state a claim for disparate impact based on race). Plaintiff's disparate impact claim is dismissed without prejudice.[4]

C.  *Retaliation*

Plaintiff's final Title VII claim (Sixth Claim for Relief) is based upon alleged retaliation. A prima facie case of retaliation requires a showing that (1) plaintiff engaged in protected opposition to discrimination, (2) a reasonable employee would have found the challenged employer action to be materially adverse, and (3) there is a causal connection between the

---

[4] It is unclear at this point whether plaintiff can state any claim for disparate impact that has been exhausted. Her formal Charge of Discrimination (Doc. 12-1), which she identified in her Petition as being the basis for exhaustion, does not mention disparate impact or the facts that plaintiff asserts in her Petition (i.e. stereotyping, grooming of Caucasian employees, or applying arbitrary and/or subjective criteria) to support such a claim, and the disparate impact claim would thus also be dismissible for failure to exhaust. *See, e.g., Garrett v. Federal Express Corp.*, No. 08-CV-61-CVE, 2008 WL 2365020 (N.D. Okla. Jun. 6, 2008). Her Intake Questionnaire does reference "disparate impact in promotions" but references an attachment that has not been provided (by either party) to the Court. (*See* Doc. 18-1). As a result, the Court does not have before it any factual allegations provided to the EEOC that would support any claim of "disparate impact in promotions." (*See id.*). To the extent that plaintiff amends to reassert a disparate impact claim, she should, at a minimum, identify (1) information by which it may be determined that she exhausted such claim and (2) the specific practice(s) which she alleges to have had a disparate impact upon African American employees.

protected activity and the materially adverse action. *Somoza v. University of Denver*, 513 F.3d 1206, 1212 (10th Cir. 2008); *Fye v. Oklahoma Corp. Comm'n*, 516 F.3d 1217, 1227 (10th Cir. 2008) (citation omitted). Plaintiff's retaliation claim is based on allegations that she complained "about the discrepancies in pay and [the] failure to promote her to a position for which she was clearly qualified," "[n]o action was taken in response to her complaints," and defendant told her that she could voluntarily resign if she did not agree with defendant's conduct. (Doc. 2 at ¶¶ 61-63; *see also id.* at ¶ 38). She asserts that "this retaliation was in the form of . . . continued failure to appropriately and fairly compensate her . . . and continued failure to promote to a Sergeant position." (*Id.* at ¶ 39; *see also id.* at 64).

Plaintiff's allegations do not state a claim for retaliation, because she has not alleged facts reflecting any action taken in response to alleged engagement in a protected activity. She asserts that, after she complained about her pay and failure to promote her, "*[n]o action was taken in response to her complaints*." (Doc. 2 at ¶ 62). In short, according to plaintiff's own allegations, there was no change in employment status, as *there was no change at all*, only a continuation of what plaintiff asserts was improper pay that was not in accord with defendant's pay structure. This does not amount to any retaliatory action or show the requisite causal connection. The Petition does not state a claim for retaliation under Title VII, and that claim is therefore dismissed without prejudice.

**IV.    Claims under 42 U.S.C. §§ 1981 and 1983 (Second and Third Claims for Relief)**

    *A.    Supervisory / Personal Liability under § 1983*

Plaintiff attempts to assert supervisory liability claims against the defendant, in his personal capacity, under § 1983. In order to maintain a claim of supervisory liability, plaintiff must allege that "(1) the defendant promulgated, created, or implemented or possessed

12

responsibility for the continued operation of a policy that (2) caused the complained of constitutional harm and (3) acted with the state of mind required to establish the complained of constitutional deprivation." *Dodds v. Richardson*, 614 F.3d 1185, 1199 (10th Cir. 2010). A plaintiff must ultimately show that the defendant's "individual actions cause[d] a constitutional deprivation." 614 F.3d at 1200.

Plaintiff's allegations are conclusory and vague, asserting that defendant "was aware of widespread complaints of African Americans regarding hostile work environment and difference in treatment based on race, like those of Plaintiff [and] was further aware that his subordinates, supervisors of the Sheriff's department, failed to remedy the discrimination and hostile work environment." (Doc. 2 at ¶ 49). She further asserts that she "brought her complaints of race and gender discrimination directly to [defendant], who intentionally and purposefully ratified the discrimination by his conscious failure to address the issues raised by Plaintiff." (*Id.*). And, "[a]s such, [defendant] intentionally failed to remedy the difference in treatment on the basis of race." (*Id.*). Each of these allegations is conclusory, and there are no facts identifying any acts of racial discrimination. Plaintiff also references alleged "unlawful hiring, pay, and promotion practices based on race and gender" and "policies and practices of racial discrimination and harassment" and that such practices have deprived plaintiff of equal protection and due process, but she has not identified what those practices and policies are, what defendant did that constituted or authorized discrimination, harassment or hostility, or how any such actions impacted her. Plaintiff's conclusory, unspecific allegations do not "raise a right to relief above the speculative level," and accordingly do not state a claim for supervisory liability under § 1983. *See Twombly*, 550 U.S. at 556; *Iqbal*, 556 U.S. at 684. Her claim for supervisory liability is dismissed without prejudice.

### B.     *Municipal Liability under § 1983*

Plaintiff's § 1983 claim also appears to assert a claim against defendant in his official capacity. A claim against a state actor in his official capacity "is essentially another way of pleading an action against the county or municipality" he represents, and is considered under the standards applicable to § 1983 claims against municipalities or counties. *Porro v. Barnes*, 624 F.3d 1322, 1328 (10th Cir. 2010). To hold a county / municipality liable under § 1983, a plaintiff must demonstrate that an officer deprived plaintiff of a constitutional right and a county policy or custom was the moving force behind the constitutional deprivation. *See City of Canton v. Harris*, 489 U.S. 378, 385-89 (1989); *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978). "When an officer deprives a citizen of a constitutional right, municipal governments may incur liability under § 1983 when 'the action that is alleged to be unconstitutional implements or executes a policy, statement, ordinance, regulation or decision officially adopted and promulgated by that body's officers." *Olsen v. Layton Hills Mall*, 312 F.3d 1304, 1318 (10th Cir. 2005) (quoting *Monell*, 436 U.S. at 690).

For the same reasons plaintiff's conclusory allegations fail to state a claim for supervisory liability, the Petition does not state a claim for municipal liability, or liability against Sheriff Glanz in his official capacity. Accordingly, her § 1983 official capacity claim is also dismissed without prejudice.

### C.     *Plaintiff's Allegations of a § 1981 Claim*

Defendant seeks dismissal of plaintiff's Second Claim for Relief, because the assertions in that claim are "nonsensical" and because damages claims against state actors for alleged § 1981 violations must be brought under 42 U.S.C. § 1983. Defendant is correct that the single substantive paragraph under the § 1981 claim is not a sentence and is nonsensical: "By treating

Plaintiff differently than similarly-situated Caucasian employees with regard to job assignments, benefits, and promotions, Defendants have violated Caucasian coworkers, Defendants and its agents have violated 42 U.S.C. § 1981." (Doc. 2 at 47).

Also, § 1983 provides the exclusive remedy for damages against state actors for claims arising under § 1981. *See, e.g., Bolden v. City of Topeka, Kansas*, 441 F.3d 1129 (10th Cir. 2006) ("damages claims against state actors for § 1981 violations must be brought under § 1983). Plaintiff responds that her § 1981 claim is intended to be asserted through the remedies provided by § 1983, and she cites Tenth Circuit authorities supporting such a construction. *See Bolden*, 441 F.3d at 1137 ("even if Mr. Bolden had not been sufficiently clear about bringing the § 1981 claim under § 1983, the district court should have permitted him to amend his complaint to do so"); *Sims v. Unified Govt. of Wyandotte County*, 120 F. Supp. 2d 938, 953 (D. Kan. 2000) (authorizing leave to amend "to clarify that [plaintiff was] pursuing her [§ 1981] claims, to the extent that they allege municipal liability, solely through the remedies provided by 42 U.S.C. § 1983."). To the extent that plaintiff amends in an attempt to state a claim under § 1983, she may attempt to cure the deficiencies noted as to the Second and Third Claims for Relief.

IT IS THEREFORE ORDERED that the Motion to Dismiss (Doc. 12) is **granted**. To the extent the Court has dismissed certain claims without prejudice or authorized amendment of certain claims, as set forth above, any amended pleading by plaintiff shall be filed within **14 days** of the entry of this Opinion and Order.

IT IS SO ORDERED this 31st day of December, 2013.

JOHN E. DOWDELL
UNITED STATES DISTRICT JUDGE

15